James T. Hallinan, J.
These proceedings under article 78 of the Civil Practice Act are to review the grant by the State Bent Commission of overall increases in maximum rents of 480 apartments which are part of a 759 apartment development constructed in 1937-1939. Title to the development is in three separate corporations — First, Second and Third Garden Bay Manor, Inc. — which own 279, 210 and 270 apartments respectively. Applications for increases were made by and granted to all three corporations, but only groups of tenants living in apartments owned by Second and Third Garden Bay Manor, Inc., have brought proceedings to review the increases granted to said owners.
Petitioners claim that a value other than the equalized assessed valuation of the property should have been used in light of pending undetermined certiorari proceedings to reduce the assessed valuation since the year 1949-1950. The mere filing, however, of applications to reduce assessments and the institution of proceedings to review them do not establish the value oí *832 property at the deflated prices claimed by the owners nor carry assurance that any reduction will be forthcoming or is warranted. It was, therefore, reasonable for the commission to adopt the assessments of record as the index of value of the properties in question until such time as such assessments are actually reduced. In any event, it is discretionary rather than mandatory for the commission to determine the value of property in an amount other than the assessed value. (Matter of Abrams v. McGoldrick, 282 App. Div. 192.) In relying upon the assessed value as the basis herein, it cannot be said that the commission, under the facts and circumstances here presented, acted arbitrarily. As pointed out by the commission on page 8 of its brief: ‘ ‘ Should a tax reduction be granted subsequently and should this tax reduction result in a substantial improvement in the owner’s operating position, the tenants have a right to file an application requesting that the adjustment previously granted be revoked on the ground that the necessity for the adjustment granted no longer exists, in whole or in part. At that time a re-examination would be made of the landlord’s financial situation in order to determine whether any or all of the adjustments previously granted should be modified or rejected.”
The next point made by the petitioners is that it was arbitrary and capricious for the respondent not to consider additional earned income received by Greenway Apartments, Inc., from rental units it furnished and rented to others. The record, however, shows that a complete investigation was made by the respondent into the relation of that corporation with the corporate owners of the development. It was found that Greenway was organized in July, 1942 as a separate entity for the purpose of furnishing and renting a group of apartments in Garden Bay Manor. This was prior to the advent of rent control. Greenway is and always has been required to comply with the same conditions as all other tenants in the development and to pay the same rentals as charged to other tenants. None of its officers, directors or stockholders are or ever were financially interested in the owning corporations and none of the directors and stockholders of the latter advanced or loaned any capital used in organizing Greenway or ever received or were entitled to receive any dividends therefrom.
Accordingly, there is substantial evidence in the record to support the respondent’s action in charging the owning corporations solely with the maximum rents received for these apartments from Greenway as unfurnished units and refusing to *833 include the rentals received by G-reenway from furnished units. Petitioners’ claim that they were not given adequate opportunity to develop by cross-examination of the landlords’ witnesses the true relationship of Greenway with the owning corporations is without substance. All of the affidavits and information which were available to the respondent concerning this issue were made available to the attorneys for the petitioners, who, in fact, examined the file but were unable to submit any proof to show a subterfuge. Inference and conjecture were insufficient and properly rejected as the basis for holding a plenary hearing which, in any event, is discretionary. (State Residential Rent Law, § 8, subd. 3; L. 1946, ch. 274, as amd.)
Equally without substance is the petitioners’ claim that the respondent was arbitrary and capricious in allowing management fees as an expense item to the landlords measured by the standard established by the Real Estate Board for Queens. As was observed by Mr. Justice Hoestadter in Cresco Realty Corp. v. McGoldrick (118 N. Y. S. 2d 502, 504): “The adoption of a standard in general use by those actively engaged in the management of real estate cannot be said to be arbitrary. ’ ’
Finally, petitioners complain that they were denied permission to examine and audit the owners’ books. The respondent points out that the commission’s procedure in that respect followed that of its predecessor, Temporary City Rent Commission, in corresponding proceedings. There is no evidence that the petitioners were ever denied an opportunity of an independent audit of the audit made by the commission’s accounting staff and there is no evidence of a substantial nature submitted by them that such audit contained any material or substantial error.
The petitioners having failed to demonstrate that the determinations under review were arbitrary, capricious or lacked reasonable grounds to support them, such determinations are confirmed and the petitions dismissed on the merits, without prejudice, however, to applications for revision should the pending certiorari proceedings result in a tax reduction with a substantial improvement in the owners’ operating position.
Submit orders.